Cam F. DOWELL, Jr., Evelyn Dowell
and Hillcrest State Bank,
Plaintiffs-Appellees,

v.

UNITED STATES of America,
Defendant-Appellant.

No. 74–3057.

United States Court of Appeals,
Fifth Circuit.

Nov. 7, 1975.

Rehearing Denied Dec. 29, 1975.

Scott P. Crampton, Asst. Atty. Gen.,
Gilbert E. Andrews, Acting Chief, Appel-
late Section, Elmer J. Kelsey, Atty., U.
S. Dept. of Justice, Tax Div., Wash-
ington, D. C., William W. Guild, Tax
Div., Dept. of Justice, Dallas, Tex., F.
Arnold Heller, Tax Div., Dept. of Justice,
Washington, D. C., for defendant-appel-
lant.

Robert W. Ryan, Jr., Ethan B. Stroud,
Richard D. Pullman, Dallas, Tex., for
plaintiffs-appellees.

Before BROWN, Chief Judge, and
GODBOLD and CLARK, Circuit Judges.

JOHN R. BROWN, Chief Judge:

During a period of years, 1964–67,
Taxpayers Hillcrest State Bank (Hill-
crest) and its Chairman of the Board,
Dowell, incurred a great number and va-
riety of entertainment and travel ex-
penses which they attempted to deduct
as business expenses. When the Com-
missioner of Internal Revenue disallowed
the deductions, Taxpayers commenced
refund suits in United States District
Court. The District Court found that
refunds were called for because all de-
ductions were properly taken as ordinary
and necessary business expenses under
§ 162 of the Internal Revenue Code of
1954 and were sufficiently substantiated
under § 274(d). 370 F.Supp. 69 (N.D.
Tex.1974).

We hold that the District Court erred
in its application of § 274(d)'s substantia-
tion requirements. We vacate the Dis-
trict Court's judgments and remand for
reconsideration in accordance with our
opinion.

Hillcrest is a Texas corporation with
its principal office in Dallas, Texas.
During the years in issue, Dowell was
Hillcrest's President and Chairman of its
Board of Directors. In addition, Dowell
maintained a ranch and an insurance,
loan and real estate business in or near
Greenville, Texas, some 50 miles from
Dallas.

During the years in question, Hillcrest
paid club bills, hotel bills, airline ticket

charges and other travel charges incurred by or on behalf of Dowell. These payments were charged to Hillcrest's "dues, subscriptions and entertainment" account and taken as deductions by Hillcrest on its tax returns for those years. Hillcrest additionally paid Dowell a total of $150.00 per month in the form of two $75.00 checks, one of which was charged to Hillcrest's "traveling" account, the other of which was charged to its "dues, subscriptions and entertainment" account. Hillcrest similarly deducted the yearly totals of these amounts. The IRS disallowed these deductions by Hillcrest and taxed the amounts as dividends to Dowell.

During the same period, Dowell made expenditures from his personal funds in connection with his personal business interests and listed such expenditures under the headings "travel and entertainment," "fees," "auto expenses," and "advertising." On his tax returns for those years, Dowell took portions of these expenditures as deductions, most of which deductions were disallowed by the IRS.

The IRS assessed additional income tax and interest against Hillcrest for the years 1964 through 1967 in the total amount of $21,655.15. After Hillcrest's refund claims were disallowed, Hillcrest filed timely suits for refunds for the years 1964–65 and 1966–67, respectively. The IRS also assessed additional income tax and interest against Dowell[1] for the years 1964 through 1967 in the total amount of $31,861.44. After Dowell's refund claims were similarly disallowed, Dowell also filed timely suits for refunds

for the same years. The four consolidated cases were tried before the District Court without a jury. Upon its memorandum opinion the District Court rendered separate judgments in favor of Hillcrest and Dowell. The Government appeals.

At trial, a number of bills, chits and other papers related to Dowell's travel and meals with other persons were admitted into evidence. Many of these bills, however, contained only monthly aggregates of individual expenditures, without specification of time, place or individual amount. Almost all of the exhibits failed to contain a contemporaneous record of the business purpose or business relationship of the person or persons entertained. To supply the latter elements, Taxpayers brought in numerous witnesses who testified as to Dowell's dedication to and total absorption in the business affairs of Hillcrest and his own business interests. But while most of the witnesses testified to having been entertained by Dowell at various "business" lunches, etc., most of them could not identify with particularity any specific date or dates on which they had been entertained, the place at which they had been entertained on any given date, the specific business discussed, or the amount of expense incurred by Dowell, nor could Dowell fill in the gaps.

Entertainment and travel expense deductions are governed by the general provisions of § 162,[2] which require the expense to be ordinary and necessary and to be business-related. The District Court had a great deal of evidence be-

---

1. Evelyn Dowell is also a party to the actions as a result of her having filed joint income tax returns with her husband during the years at issue.

2. 26 U.S.C.A.

§ 162. *Trade or business expenses*
*(a) In general.*—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—
(1) a reasonable allowance for salaries or other compensation for personal services actually rendered;

(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; and
(3) rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.
Int.Rev.Code of 1954, as amended.

fore it which fully supports its conclusion that Dowell, personally, was totally absorbed in conducting Hillcrest's and his own business, that such expenses were common in the banking industry, and in fact contributed to Hillcrest's growth. We think, in this case, that there is sufficient circumstantial evidence to satisfy the requirements of § 162. *See Andress v. Commissioner,* 51 T.C. 863, 868 (1969), *aff'd* 5 Cir., 1970, 423 F.2d 679. We do not understand the Government to seriously challenge this phase of the District Court's holding.

Rather, the central issue on appeal is whether amounts deducted as business expenses for travel and entertainment by Dowell and Hillcrest were properly substantiated as required by § 274(d).[3]

**3.** 26 U.S.C.A.

§ 274. *Disallowance of certain entertainment, etc., expenses*

(a) *Entertainment, amusement, or recreation.*—

(1) *In general.*—No deduction otherwise allowable under this chapter shall be allowed for any item—

(A) *Activity.*—With respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, unless the taxpayer establishes that the item was directly related to, or, in the case of an item directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), that such item was associated with, the active conduct of the taxpayer's trade or business, or

(B) *Facility.*—With respect to a facility used in connection with an activity referred to in subparagraph (A), unless the taxpayer establishes that the facility was used primarily for the furtherance of the taxpayer's trade or business and that the item was directly related to the active conduct of such trade or business,

and such deduction shall in no event exceed the portion of such item directly related to, or, in the case of an item described in subparagraph (A) directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), the portion of such item associated with, the active conduct of the taxpayer's trade or business.

(2) *Special rules.*—For purposes of applying paragraph (1)—

(A) Dues or fees to any social, athletic, or sporting club or organization shall be treated as items with respect to facilities.

(B) An activity described in section 212 shall be treated as a trade or business.

(d) *Substantiation required.*—No deduction shall be allowed—

(1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home),

(2) for any item with respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, or with respect to a facility used in connection with such an activity, or

(3) for any expense for gifts,

unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility, or receiving the gift. The Secretary or his delegate may by regulations provide that some or all of the requirements of the preceding sentence shall not apply in the case of an expense which does not exceed an amount prescribed pursuant to such regulations.

(e) *Specific exceptions to application of subsection (a).*—Subsection (a) shall not apply to—

(1) *Business meals.*—Expenses for food and beverages furnished to any individual under circumstances which (taking into account the surroundings in which furnished, the taxpayer's trade, business, or income-producing activity and the relationship to such trade, business, or activity of the persons to whom the food and beverages are furnished) are of a type generally considered to be conducive to a business discussion.

(2) *Food and beverages for employees.*—Expenses for food and beverages (and facilities used in connection therewith) furnished on the business premises of the taxpayer primarily for his employees.

(3) *Expenses treated as compensation.*—Expenses for goods, services, and facilities, to the extent that the expenses are treated by the taxpayer, with respect to the recipient of the entertainment, amusement, or recreation, as compensation to an employee on the taxpayer's return of tax under this chapter and as wages to such employee for purposes of chapter 24 (relating to withholding of income tax at source on wages).

(4) *Reimbursed expenses.*—Expenses paid or incurred by the taxpayer, in connection with the performance by him of services for another person (whether or not such other

If these deductions were not substantiated, Dowell cannot deduct expenditures made in connection with his own businesses, and Hillcrest's payments of Dowell's expenditures on its behalf plus the $150.00 per month which it paid directly to Dowell are income to Dowell. Also, if these deductions were not substantiated, the Government contends that the payments by Hillcrest of Dowell's expenditures and the $150.00 per month it paid directly to Dowell constitute a constructive dividend and are therefore not deductible by Hillcrest.

Section 274 represents a Congressional resolution of competing policy considerations. Much opposition is voiced to entertainment deductions altogether because the "average" taxpayer is not able to deduct the cost of his meals or entertainment, and it is therefore thought inequitable ever to permit the often affluent businessman to do so.

In addition, the deduction was often abused by overestimating the amount of the expense or assigning dubious business purposes to what were essentially personal entertainment or travel expenditures, thus undermining public confidence in the impartial imposition of taxes. Some thought the blame for this abuse started on Broadway and ended at Foley Square. In *Cohan v. Commissioner of Internal Revenue,* 2 Cir., 1930, 39 F.2d 540, Judge Learned Hand, writing the opinion of the Court, held that where evidence indicated that the taxpayer had incurred deductible entertainment and

travel expenses, but these amounts could not be determined with exactitude, the Court—in an effort to be equitable—must make "as close an approximation as it can" rather than disallow the deduction entirely. Id. at 543–44.

On the other hand, it is common knowledge that business competition is not based on price alone. Customers are naturally influenced by the services they receive incidental to the central goods-or-services transaction. Because such incidentals often depend in large part on the personalities of the seller's representatives, informal social-like contact may be critically important. Such contacts may well form the basis on which a business finally decides with whom to deal. The social aspect of courting potential customers, increasing volume from current customers, or even persuading a competitor's customers to change their allegiance is an accepted part of American business which is not thought to corrupt business men and women. Further, if the deduction were denied altogether, it is probably the small competitor who would most likely be hurt—because economies-of-scale are available to larger competitors who are more apt to be able to absorb nondeductible costs.

In order to understand fully § 274's resolution of these considerations, it is important to be aware of its legislative development. President Kennedy, in 1962, took the position that no entertainment expenses should be allowed.[4] Congress, however, declined to go that far.[5]

person is his employer), under a reimbursement or other expense allowance arrangement with such other person, but this paragraph shall apply—

(A) where the services are performed for an employer, only if the employer has not treated such expenses in the manner provided in paragraph (3), or

(B) where the services are performed for a person other than an employer, only if the taxpayer accounts (to the extent provided by subsection (d)) to such person.

Int.Rev.Code of 1954, as amended.

4. *See* 1962 U.S.Code Cong. and Admin.News, p. 3327.

5. The Treasury brought to the attention of Congress that widespread abuses have de-

veloped through the use of the expense account. In his tax message to the Congress last year, the President stated his conviction that entertainment and related expenses, even though having a connection with the needs of business, confer substantial tax-free personal benefits on the recipients, and that in many instances deductions are obtained by disguising personal expenses as business expenses. He recommended that the cost of such business entertainment and the maintenance of entertainment facilities be disallowed in full as a tax deduction and that restrictions be imposed on the deductibility of business gifts and travel expenses.

\* \* \* \* \* \*

After careful consideration of the proposal, your committee has concluded that de-

Instead, it narrowed the class of entertainment and travel expenses deductible under § 162, see § 274(a) and (e), and established strict substantiation requirements for *all* entertainment and travel deductions, see § 274(d), thus curtailing abuse of the *Cohan* rule, which permitted taxpayers to estimate entertainment and travel expenses.[6]

Congress thus declared its intent to disallow entertainment deductions based solely on a taxpayer's "own unsupported, self-serving testimony." Estimates were not to be deductible—corroboration was required. See note 6, *supra*.

Section 274(d) provides that the taxpayer must substantiate *all* expenses for

travel, entertainment, or gifts—whether falling within the requirements of § 274(a) or not—

by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility, or receiving the gift.

Pursuant to authority granted in § 274(h), Treasury Regulation 26 CFR § 1.274–5 [7] amplifies these substantiation

---

ductions for entertainment and traveling expenses and business gifts should be restricted to prevent abuses. The committee agrees that this abuse of the tax law should not be condoned, but on the other hand it does not believe that complete disallowance as recommended by the President is the proper solution to the problem. Rather, your committee is convinced that expenses incurred for valid business purposes should not be discouraged since such expenses serve to increase business income, which in turn produces additional tax revenues for the Treasury.
S.Rep.No.1881, 87 Cong., 2d Sess., at 24–25 (1962–3 Cum.Bull., at 730–31), U.S.Code Cong. & Admin.News 1962, p. 3327.

**6.** This provision is intended to overrule, with respect to such expenses the so-called *Cohan* rule. In the case of *Cohan v. Commissioner,* 39 F.2d 540 (C.A.2d, 1930), it was held that where the evidence indicated that a taxpayer had incurred deductible expenses but their exact amount could not be determined, the court must make "as close an approximation as it can" rather than disallow the deduction entirely. Under your committee's bill, the entertainment, etc., expenses in such a case would be disallowed entirely.
H.Rep.No.1447, 87th Cong., 2d Sess., at 23 (1962–3 Cum.Bull., at 427); S.Rep.No.1881, *supra*, at 35 (1962–3 Cum.Bull., at 741), U.S. Code Cong. & Admin.News 1962, p. 3337.

**7.** *§ 1.274–5 Substantiation requirements.*
\* \* \* \* \* \*
(b) *Elements of an expenditure*—(1) *In general.* Section 274(d) and this section contemplate that no deduction shall be allowed for any expenditure for travel, entertainment, or a gift unless the taxpayer sub-

stantiates the following elements for each such expenditure:
(i) Amount;
(ii) Time and place of travel or entertainment (or use of a facility with respect to entertainment), or date and description of a gift;
(iii) Business purpose; and
(iv) Business relationship to the taxpayer of each person entertained, using an entertainment facility or receiving a gift.
(2) *Travel.* The elements to be proved with respect to an expenditure for travel are—
(i) *Amount.* Amount of each separate expenditure for traveling away from home, such as cost of transportation or lodging, except that the daily cost of the traveler's own breakfast, lunch, and dinner and of expenditures incidental to such travel may be aggregated, if set forth in reasonable categories, such as for meals, for gasoline and oil, and for taxi fares;
(ii) *Time.* Dates of departure and return for each trip away from home, and number of days away from home spent on business;
(iii) *Place.* Destinations or locality of travel, described by name of city or town or other similar designation; and
(iv) *Business purpose.* Business reason for travel or nature of the business benefit derived or expected to be derived as a result of travel.
(3) *Entertainment in general.* Elements to be proved with respect to an expenditure for entertainment are—
(i) *Amount.* Amount of each separate expenditure for entertainment, except that such incidental items as taxi fares or telephone calls may be aggregated on a daily basis;
(ii) *Time.* Date of entertainment;

requirements. It provides that each element of each separate expenditure be supplied either through adequate records or through the taxpayer's own statement plus corroborative evidence sufficient to establish each element. § 1.274–5(c)(3)(i) and (ii). These requirements are based solidly on legislative history.[8]

(iii) *Place.* Name, if any, address or location, and designation of type of entertainment, such as dinner or theater, if such information is not apparent from the designation of the place;

(iv) *Business purpose.* Business reason for the entertainment or nature of business benefit derived or expected to be derived as a result of the entertainment and, except in the case of business meals described in section 274(e)(1), the nature of any business discussion or activity;

(v) *Business relationship.* Occupation or other information relating to the person or persons entertained, including name, title, or other designation, sufficient to establish business relationship to the taxpayer.

\*    \*    \*    \*    \*    \*

(c) *Rules for substantiation*—(1) *In general.* A taxpayer must substantiate each element of an expenditure (described in paragraph (b) of this section) by adequate records or by sufficient evidence corroborating his own statement except as otherwise provided in this section. Section 274(d) contemplates that a taxpayer will maintain and produce such substantiation as will constitute clear proof of an expenditure for travel, entertainment, or gifts referred to in section 274. A record of the elements of an expenditure made at or near the time of the expenditure, supported by sufficient documentary evidence, has a high degree of credibility not present with respect to a statement prepared subsequent thereto when generally there is a lack of accurate recall. Thus, the corroborative evidence required to support a statement not made at or near the time of the expenditure must have a high degree of probative value to elevate such statement and evidence to the level of credibility reflected by a record made at or near the time of the expenditure supported by sufficient documentary evidence. The substantiation requirements of section 274(d) are designed to encourage taxpayers to maintain the records, together with documentary evidence, as provided in subparagraph (2) of this paragraph. To obtain a deduction for an expenditure for travel, entertainment, or gifts, a taxpayer must substantiate, in accordance with the provisions of this paragraph, each element of such an expenditure.

(2) *Substantiation by adequate records*—(i) *In general.* To meet the "adequate records" requirements of section 274(d), a taxpayer shall maintain an account book, diary, statement of expense or similar record (as provided in subdivision (ii) of this subparagraph) and documentary evidence (as provided in subdivision (iii) of this subparagraph) which, in combination, are sufficient to establish each element of an expenditure specified in paragraph (b) of this section. It is not necessary to record information in an account book, diary, statement of expense or similar record which duplicates information reflected on a receipt so long as such account book and receipt complement each other in an orderly manner.

\*    \*    \*    \*    \*    \*

(3) *Substantiation by other sufficient evidence.* If a taxpayer fails to establish to the satisfaction of the district director that he has substantially complied with the "adequate records" requirements of subparagraph (2) of this paragraph with respect to an element of an expenditure, then, except as otherwise provided in this paragraph, the taxpayer must establish such element—

(i) By his own statement, whether written or oral, containing specific information in detail as to such element; and

(ii) By other corroborative evidence sufficient to establish such element.

If such element is the description of a gift, or the cost, time, place, or date of an expenditure, the corroborative evidence shall be direct evidence, such as a statement in writing or the oral testimony of persons entertained or other witness setting forth detailed information about such element, or the documentary evidence described in subparagraph (2) of this paragraph. If such element is either the business relationship to the taxpayer of persons entertained or the business purpose of an expenditure, the corroborative evidence may be circumstantial evidence.

8. In the Committee Reports, H.Rep.No.1447, *supra,* at 23 (1962–3 Cum.Bull., at 427), it is stated:

\*  \*  \* the degree of corroboration required to support a claimed deduction will vary as respects the business relationship and purpose, the time and place, and the amount of the expense. Thus, oral testimony of the taxpayer together with circumstantial evidence available, may be considered "sufficient evidence" for the purpose of establishing the business purpose required under the new provision. However, oral testimony of the taxpayer plus more specific evidence would be required to be "sufficient evidence" as to the amount of an expense.

In short, § 274(d) requires taxpayers to substantiate—either through adequate records or through their own statements corroborated by other evidence—each and every element (amount, date, place, business purpose, and business relationship) of each and every expenditure in order to claim entertainment and travel expenses allowed under § 274 and § 162. If such substantiation is lacking, the deduction is to be disallowed entirely. Through this statute and the expected regulations, Congress did not intend to chill the legitimate and reasonable use of business entertainment and travel, recognizing its function in American business. Its purpose was to eliminate as far as possible abuses of the deduction.

The District Court found that the times, places and amounts of expenditures had been clearly provided by "a virtual blizzard of bills, chits and other papers relating to Dowell's meals with other persons." [9] The District Court also determined that those elements for which adequate records had not been provided, namely, the business purpose and business relationship of those entertained, had been adequately substantiated by Dowell's own testimony as corroborated by the oral testimony of some 20 witnesses. These findings pertained to all three types of expenditures in question: (i) hotel, club, airline and travel bills incurred by Dowell and paid directly by Hillcrest, (ii) travel and miscellaneous expenditures made by Dowell for which he was reimbursed by Hillcrest at a flat rate of $150.00 a month, and (iii) travel, fees, entertainment and other expenses incurred and paid by Dowell himself in connection with his own various business interests. The common determination to be made is whether any expenditure in any of the categories was adequately substantiated as required by § 274(d).

The District Court heard substantial testimony that all of Dowell's activities were business-oriented and that nearly all of his activities were directed toward increasing the business of Hillcrest. The District Court determined that Dowell—a dynamo without a doubt—was totally absorbed in business activity and that therefore the element of business purpose was established for each expenditure. The District Court is entitled to credit testimony, and its finding that Dowell was totally a creature—or captive—of the business world, thereby establishing business purpose, is supported by the record. However, we anticipate that it will be only rarely that a taxpayer will be able to establish business purpose for each expenditure the way Dowell did below.

The District Court's finding that the "blizzard" of bills, chits, etc. established the amounts, dates and places of expenditures misapprehended the specificity with which a taxpayer must substantiate each expenditure deducted under § 274(d). It is apparent that the District Court was snowed under by the volume of paper in evidence and chose not to wade through it to make an expenditure-by-expenditure determination, instead making a general determination that the deductions were substantiated. Yet, this is just what § 274(d) requires the District Court to do. A less stringent examination would echo the approach under the former *Cohan* rule and clearly defeat the purpose of § 274(d).[10] We

**9.** 370 F.Supp. at 71. There were over 1,700 bills, chits and other memorabilia in evidence in this case. We decline to fly through this blizzard, mentioning only a few examples for the District Court's guidance on remand.

**10.** The District Court's reliance, 370 F.Supp. at 73–74, on the case of *LaForge v. Commissioner of Internal Revenue*, 2 Cir., 1970, 434 F.2d 370, as controlling authority for its determination that the witness' testimony was sufficiently corroborative of the elements of each ex-

penditure, is misplaced. In *LaForge*, the taxpayer was a surgeon who regularly bought lunches in the hospital cafeteria for his assistants. He kept no written records itemizing the cost of the lunches, but deducted on his income tax returns $2.00 for each day of the hospital schedule. Hospital rules forbade the cafeteria cashier from issuing receipts, but she testified that taxpayer regularly spent $2.65 to $3.00 each day for the lunches. The Tax Court ruled that the taxpayer's and the cashier's testimony did not fulfill the substantiation

need not and do not find the District Court's findings of fact to be clearly erroneous. Cf. F.R.Civ.P. 52(a). Rather, as we have many times done,[11] they cannot be accepted since the District Court applied the wrong legal standard to the evidence before it in concluding that the expenditures were adequately substantiated under § 274(d).

It is evident from Dowell's testimony alone, R. at 151–56, that some of the statements introduced from clubs such as the Texas Club or credit services such as American Express were monthly statements without itemization of the persons entertained, specific dates or amounts (or, in the case of the American Express stubs, the location at which the expense was incurred). *See* Def. Ex. 3. Even if tickets listing separate expenditures were normally returned with the monthly statements, as in the case of American Express, for example, it is apparent that Hillcrest either did not retain such tickets or chose not to offer them in evidence. R. at 153; Def. Ex. 3. Dowell did not keep an appointment book or diary. R. at 152, so it is clear, at least with respect to those expenditures listed as monthly statements, that the "adequate records" requirement was not fulfilled with respect to *each separate expenditure* included in the monthly aggregates. In many cases, it appears that Dowell did not establish the elements of these expenditures by "other sufficient evidence." Dowell testified, for example, R. at 153, 156, that he could not recall the dates on which the charges from the Texas Club and American Express were incurred. The witnesses who testified in his behalf were generally no more specific. While most of these witnesses testified to having periodic business luncheons, dinners or meetings with Dowell at numerous named clubs or restaurants, and provided general descriptions as to the type of business usually discussed at such functions, most could not identify any particular dates on which they had dined with Dowell,

requirements of the regulations, § 1.274–5(c)(3), and disallowed the deduction. On appeal the taxpayer contended that the regulation as it then existed, by requiring a written statement, disregarded the alternative statutory requirement of substantiation by "sufficient evidence corroborating his own statement." (Subsection (c)(3) of the Regulations was subsequently amended to allow for a taxpayer's oral statement.) The Second Circuit held that "To require a written statement itemizing each expenditure is, in effect, to compel the taxpayer to maintain 'adequate records' and thereby to dismiss from the statute one element of its disjunctive substantiation requirements." Id. at 372. The Court then held that although properly corroborative oral testimony may constitute adequate substantiation, the taxpayer's testimony was not "sufficiently precise" under the regulation, since he had not presented evidence as to the nondeductible cost of his own lunches. The case was accordingly remanded to the Tax Court to allow the taxpayer to prove the cost of his own meals as a part of his testimonial substantiation.

The factual distinctions between *LaForge* and the instant case are apparent. The amounts in *LaForge* were much smaller, all of the claimed expenditures were in the same cafeteria, and LaForge presented corroboration of his own statement concerning the amounts, dates and business relationships with respect to each expenditure. The entertainees were all from a small, indentifiable group, and their business relationship to the taxpayer was clear. In our case, however, Dowell has not adequately substantiated the elements of his expenditures, and the large number of expenditures, the variety of places at which Dowell entertained, and the many different people entertained by him render the possibilities for abuse infinitely greater than in *LaForge*.

Moreover, in *Hughes v. Commissioner of Internal Revenue*, 2 Cir., 1971, 451 F.2d 975, 979, the Second Circuit, in explaining its decision in *LaForge*, stated: "The significance of *LaForge* is that, even though a written statement may not be required for substantiation, the corroborative evidence must nevertheless establish each statutory element—amount, time, place and purpose—of the expenditure with precision and particularity." *Accord, Handelman v. Commissioner of Internal Revenue*, 2 Cir., 1975, 509 F.2d 1067. It is just this "precision and particularity" which is completely absent from the "corroborative" testimony of the taxpayers' witnesses in the instant case.

11. *Battelstein Investment Co. v. United States,* 5 Cir., 1971, 442 F.2d 87; *Continental Motors Corp. v. Continental Aviation Corp.,* 5 Cir., 1967, 375 F.2d 857; *Fulton National Bank v. Tate,* 5 Cir., 1966, 363 F.2d 562.

where they had eaten on any given day, or the amount of any bill.[12]

Similar in legal analysis is substantiation of the business relationship of particular entertainees to the Taxpayers. The substantiation statute says "the"—not "a"—business relationship. And the business relationship cannot be ascertained unless the taxpayer establishes the identity of his entertainee—whether by name, title or other specific designation. If such identification were not required, the element of business relationship would be redundant, since "business purpose" almost necessarily requires showing "a" business relationship.

The District Court's failure to adhere to the precise requirements of the statute and Regulations reopens the door to the very type of tax abuse which Congress intended § 274 to foreclose. Such application of the statute was error going to the very heart of the case and the critical fact findings. Accordingly, the judgments must be vacated and the case remanded to determine in accordance with applicable principles whether each expenditure was adequately substantiated.

The same principles apply to the $150.00 which Hillcrest paid Dowell each month to cover his miscellaneous travel and entertainment expenses. Dowell testified, R. at 147–48, that he used this money for such out-of-pocket expenses as parking in town or at the airport, for tips, taxicabs, for telephone calls or for buying "somebody coffee or Coca Colas or whatnot." This is the only substantiation offered by Dowell or Hillcrest with regard to these out-of-pocket expenses. Dowell testified, R. at 170–71, that the money was spent solely at his discretion, and that he "never accounted to anyone" for the expenditure of those funds.

The District Court, in reviewing the facts relevant to these out-of-pocket expenses, determined that although Dowell "did not keep a record of every dime inserted into parking meters," such substantiation was impractical and not required by the statute and Regulations. 370 F.Supp. at 75. We see no reason, however, why the taxpayer should not be held to the same substantiation requirements regarding these miscellaneous expenditures as for the expenditures previously discussed, especially since the Regulations [13] recognize the practical dif-

---

**12.** Indeed, some of the documentary evidence introduced with respect to entertainment expenditures indicates that the expenditures may well have been purely personal in nature. For example, the Rafters Club statement of February 1967 included in Plf. Ex. 7 contains three charge tickets signed by Dowell on three separate days which reflect only one drink on each ticket. Plf. Ex. 4 contains a statement from Neiman Marcus Department Store, paid in June 1964, in the amount of $255.00.

**13.** 26 C.F.R. § 1.274–5 Substantiation Requirements

\* \* \* \* \* \*

(b)(2) *Travel.* The elements to be proved with respect to an expenditure for travel are—
  (i) *Amount.* Amount of each separate expenditure for traveling away from home, such as cost of transportation or lodging, except that the daily cost of the traveler's own breakfast, lunch, and dinner and of expenditures incidental to such travel may be aggregated, if set forth in reasonable categories, such as for meals, for gasoline and oil, and for taxi fares;

\* \* \* \* \* \*

(3) *Entertainment in general.* Elements to be proved with respect to an expenditure for entertainment are—

(i) *Amount.* Amount of each separate expenditure for entertainment, except that such incidental items as taxi fares or telephone calls may be aggregated on a daily basis;

\* \* \* \* \* \*

(c)(6)(i)(b) *Aggregation.* Except as otherwise provided in this section, the account book, diary, statement of expense, or similar record required by subparagraph (2)(ii) of this paragraph shall be maintained with respect to each separate expenditure and not with respect to aggregate amounts for two or more expenditures. Thus, each expenditure for such items as lodging and air or rail travel shall be recorded as a separate item and not aggregated. However, at the option of the taxpayer, amounts expended for breakfast, lunch, or dinner, may be aggregated. A tip or gratuity which is related to an underlying expense may be aggregated with such expense. For other provisions permitting recording of aggregate amounts in an

ficulties by allowing aggregations in realistic related categories. Even though Dowell was not required under the Regulations to record every dime he spent, it appears that he did not keep *any* record of *any* dime or aggregate of dimes spent anywhere. He kept no diary or account book, R. at 152, and offered no corroboration of his own statement as to the use made of the $150.00 which he received every month from Hillcrest. Since Dowell did not keep a diary or account book, and since no other attempt was made to demonstrate how much he might have spent for telephone calls, or for coffee and cokes for customers, etc., Dowell's own testimony was insufficient without proper corroboration to substantiate the business use of these funds. The District Court erred in not requiring adequate substantiation under the Regulations as to the use Dowell made of the $150.00 which he received from Hillcrest each month.

The Government further contends that the amounts expended by Hillcrest to cover Dowell's expenditures, including the $150.00 paid directly to Dowell each month, constitute a "constructive dividend" from Hillcrest to Dowell because they conferred an "economic benefit on the stockholder without the expectation of repayment," *Gibbs v. Tomlinson,* 5 Cir., 1966, 362 F.2d 394, and that they are thus not deductible by Hillcrest. The District Court did not consider this issue, since it found that the monthly payments by Hillcrest to Dowell were used to reimburse properly substantiated expenditures by Dowell on behalf of Hillcrest and therefore were deductible. Since we lack both the necessary findings of fact and those made in the light of applicable principles to decide whether Hillcrest's payments to Dowell constituted as to Hillcrest constructive dividends, we leave this issue initially to the decision of the District Court on remand. *See Gibbs v. Tomlinson, supra; Para-*

mount-*Richards Theatres, Inc. v. Commissioner of Internal Revenue,* 5 Cir., 1946, 153 F.2d 602.

Vacated and remanded.

---

account book, diary, statement of expense or similar record see paragraph (b)(2)(i) and

(b)(3) of this section (relating to incidental costs of travel and entertainment).